IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EQT GATHERING, LLC,

                Plaintiff,

v.                                CIVIL ACTION NO.   2:13-cv-08059

STEVE MARKER,

                Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Strike Plaintiff's Untimely August 14, 2015 Amended Responses to Defendant's First Request for Admission and Second Set of Interrogatories and Request for Production (the "Motion for Sanction"). (ECF No. 100.) For the reasons provided herein, the Court **GRANTS** the Motion for Sanction to the extent that Defendant requests that the Court exclude Plaintiff's August 14, 2015 supplemental discovery disclosures (the "Supplemental Disclosures").

## I.   Background

This action relates to a right of way purportedly held by Plaintiff for purposes laying, maintaining, and operating a "one 8 inch gas line across [a] surface tract" (the "Right of Way"). (ECF No. 1 ¶ 3.) Plaintiff "is a Delaware limited liability company licensed to and doing business in the State of West Virginia." (*Id.* ¶ 1.) Plaintiff alleges that it "is a successor-in-interest . . . with

1

respect to" the Right of Way, which was originally granted to Clayco Gas Company in 1925. (*Id.* ¶ 3.) Defendant "is a West Virginia resident who owns a parcel of property located on Laurel Fork of Ely Creek, Washington District, Lincoln County, West Virginia," which includes the surface tract of land at issue in this case. (*Id.* ¶ 2.)

On April 16, 2013, Plaintiff filed the Verified Petition for Temporary Restraining Order and for Permanent Injunction (the "Petition"). (ECF No. 1.) In the Petition, Plaintiff alleges that Defendant "disturbed the status quo of [the Right of Way] by crossing, excavating and otherwise interfering with the same." (*Id.* ¶ 9.) The Petition includes three claims: (1) Count I—Injunction, (*id.* ¶¶ 12–17); (2) Count II—Declaratory Judgment, (*id.* ¶¶ 18–22); and (3) Count III—Trespass, (*id.* ¶¶ 23–24). Plaintiff requests the following diverse relief in the Petition: (1) "a temporary restraining order and/or preliminary injunction requiring [Defendant] and/or his agents to cease and desist from engaging in any further surface activities upon, over, under or related to the [Right of Way];" (2) "a permanent injunction enjoining [Defendant] and/or his agents from engaging in any further surface activities upon, over, under or related to [the Right of Way];" (3) "declaratory judgment against [Defendant] . . . that [Defendant] be required to pay for the remedial measures to be undertaken by [Plaintiff] to bury and/or relocate [the] pipeline;" (4) "declaratory judgment against [Defendant] . . . that [Defendant] refrain from encroaching upon [the Right of Way];" (5) damages for Defendant's alleged trespass on the Right of Way; and (6) "pre-judgment and post-judgment interest, costs and attorney fees." (*Id.* at 5–6.)

On July 23, 2014, Defendant filed his currently operative counterclaims. (ECF No. 23.) Defendant's counterclaims include the following: (1) Count I—Private Nuisance, (*id.* ¶¶ 14–22); (2) Count II—Trespass, (*id.* ¶¶ 23–25); and (3) Count III—Breach of Contract and Promissory

Estoppel, (*id.* ¶¶ 26–38). Defendant's prayers for relief include declaratory judgment, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs. (*Id.* at 8.)

By its First Amended Scheduling Order entered on May 19, 2015, the Court ordered that "[t]he parties shall serve all discovery requests and complete all depositions by June 15, 2015." (ECF No. 67 ¶ 1.) The Court further ordered that June 15, 2015 "shall be the discovery completion date by which all discovery . . . shall be completed."[1] (*Id.*)

On February 12, 2015, Defendant served on Plaintiff his First Requests for Admissions and Second Set of Interrogatories and Request for Production to Plaintiff. (ECF No. 45.) Defendant's Interrogatory No. 1 requested the following information:

> Please set forth in chronological order every transaction, conveyance, assignment, deed and/or event that explains or demonstrates your status as the successor-in-interest to Clayco Gas Company, as alleged in the [Petition]. Identify all documents that evidence each transaction, conveyance, assignment, deed and/or event.

(*E.g.*, ECF No. 107, Ex. A at 3.) Plaintiff responded to these discovery requests on March 27, 2015. (ECF No. 49.) In response to Defendant's Interrogatory No. 1, Plaintiff listed the chain of title for the Right of Way as the following:

> Ward Pauley & Hattie Pauley granted [the Right of Way] to the Clayco Gas Company on or about July 14, 1925. On or about December 20, 1939, Clayco Gas Company changed its name to South Penn Natural Gas Company. On or about February 28, 1952, South Penn Natural Gas Company granted an assignment of the [Right of Way] to Hope Natural Gas Company. On or about April 1, 1965, Hope Natural Gas Company conveyed the [Right of Way] to Consolidated Gas Supply Corporation by confirmatory deed. On or about April 30, 1980, Consolidated Gas Supply Corporation assigned the [Right of Way] to Consolidated Gas Transmission

---

[1] In the first scheduling order for this case entered on April 3, 2014, the Court set a "discovery completion date" of January 28, 2015. (ECF No. 14 ¶ 2.) On January 5, 2015, the Court granted a joint motion from the parties to amend the scheduling order and set a new "discovery completion date" of June 15, 2015. (ECF No. 36 at 1.) In the First Amended Scheduling Order entered on May 19, 2015, the Court again granted a joint motion from the parties to amend the scheduling order, but retained the same June 15, 2015 deadline to complete fact discovery. (ECF No. 67 at 1.)

3

Corporation. On or about January 13, 1988, Consolidated Gas Transmission Corporation changed its name to CNG Transmission Corporation. On or about April 1, 1996, CNG Transmission Corporation assigned the [Right of Way] to Ashland, Inc. On or about March 19, 1997, Ashland Exploration, Inc. changed its name to Blazer Energy Corp. On or about October 21, 1999, Blazer Energy Corp. changed its name to Eastern States Oil & Gas, Inc. On or about June 16, 2000, Eastern States Oil & Gas, Inc. changed its name to Equitable Production – Eastern States, Inc. On or about June 28, 2001, Equitable Production – Eastern States, Inc. merged with and into Equitable Production Company. On January 1, 2005, Equitable Production Company subleased the subject pipeline to Equitable Gathering Equity, LLC. On April 3, 2009, Equitable Gathering Equity, LLC changed its name to EQT Gathering Equity, LLC. On December 31, 2013, EQT Gathering Equity, LLC merged with and into [Plaintiff].

(ECF No. 100, Ex. Y at 4–5 (citations omitted).) As this quoted language indicates, Plaintiff's response to Defendant's Interrogatory No. 1 included a gap in Plaintiff's chain of title for the Right of Way between Ashland, Inc.'s interest in 1996 and Ashland Exploration, Inc.'s interest in 1997 (the "Chain-of-Title Gap"). (*See id.*)

On May 5, 2015, Defendant filed his notice to take the deposition of Plaintiff's representative pursuant to Federal Rule of Civil Procedure 30(b)(6).[2] (ECF No. 61.) Prior to the Rule 30(b)(6) deposition, Plaintiff served Defendant with its First Supplemental Responses to Defendant's First Request for Admissions and Second Set of Interrogatories and Request for Production to Plaintiff on July 13, 2015. (ECF No. 88, Ex. 1 at 2.) These supplemental discovery disclosures only included a supplemental response to Defendant's Interrogatory No. 1, which provided the following:

Incorporating its initial objections and response to this Interrogatory, [Plaintiff] states as follows: Upon information and belief, Ashland, Inc. assigned the [Right of Way] to Ashland Gas Marketing, Inc. in June 1996. [Plaintiff] further states, upon information and belief, Ashland Gas Marketing, Inc. then changed its name to Ashland Exploration, Inc. in September 1996. [Plaintiff] reserves the right to supplement this response with additional information.

---

[2] Defendant errantly styled the Rule 30(b)(6) notice as "Defendant's Notice of F.R.C.P. Rule 30(b)(7) [sic] Corporate Representative Deposition of Plaintiff EQT Gathering . . . , LLC." (ECF No. 61.)

(*Id.* at 5.) Plaintiff did not include any documentation or additional evidence supporting this supplemental response. (*See* ECF No. 88, Ex. 1 (providing Plaintiff's first supplemental response to Defendant's Interrogatory No. 1 and documents related to the chain of title, but not including any evidence supporting Plaintiff's supplemental response regarding the Chain-of-Title Gap).)

One week later on July 20, 2015, Defendant took the Rule 30(b)(6) deposition of Plaintiff's representative—Joe Gilmore. (ECF No. 107, Ex. B.) Mr. Gilmore stated that he was prepared to testify regarding the Chain-of-Title Gap. (*Id.* at 12:10–24.) Mr. Gilmore also testified that his preparations as to this issue included "review[ing] the information that was discovered" by Plaintiff's "legal group," as well as discussing the issue with the individual who "discovered" the information. (*Id.* at 13:1–22.) However, Mr. Gilmore testified that he did not know how Plaintiff arrived at its belief regarding the Chain-of-Title Gap, as provided in its July 13, 2015 supplemental response to Defendant's Interrogatory No. 1. (*Id.* at 14:10–15:2.) Additionally, Mr. Gilmore testified that he had "not seen the documents that would support" Plaintiff's July 13, 2015 supplemental response, he was "not aware of any documents," and he did not know if documents supporting this response exist. (*Id.* at 15:11–16:4.) The record does not include any documents otherwise supporting Plaintiff's first supplemental response to Defendant's Interrogatory No. 1.

Defendant filed his motion for summary judgment roughly three weeks later on August 7, 2015. (ECF No. 85.) In this motion, Defendant requests summary judgment as to all three of Plaintiff's claims and Defendant's counterclaim two—trespass—on the grounds that Plaintiff has failed to show that it has a valid interest in the Right of Way due to Chain-of-Title Gap. (*Id.* at 6–8.)

Seven days later on August 14, 2015, Plaintiff served Defendant with the Supplemental

Disclosures. (ECF No. 87.) As with Plaintiff's first supplemental responses, the Supplemental Disclosures only address Defendant's Interrogatory No. 1. (*See* ECF No. 107, Ex. A at 4–5.) In the Supplemental Disclosures, Plaintiff provides the following supplemental response to Defendant's Interrogatory No. 1:

> Incorporating its initial objections and amending its initial and supplemental responses to this Interrogatory, [Plaintiff] states that it has conducted further research and review of the assignments of the [Right of Way] at issue and clarifies its prior response and supplemental response as follows: After multiple diligent searches, [Plaintiff] was unable to locate in its files or in the files of the Lincoln County Clerk's Office any conveyance from Ashland, Inc. to Ashland Gas Marketing, Inc. in June 1996 and determined that the [Right of Way] was actually assigned as part of the attached "Assignment, Bill of Sale and Conveyance" which conveyed the [Right of Way] at issue from Ashland, Inc. to Blazer Energy Corp. *See* Document Numbers EQT-MARKER-003812 – EQT-MARKER-003822 of record at Assignment Book 15, Page 535 in the Lincoln County Clerk's Office.

(*Id.* at 5.) In its opposition brief to Defendant's motion for summary judgment—which Plaintiff filed on the same date—Plaintiff states that its new position in the Supplemental Disclosures regarding the Chain-of-Title Gap is based on "further research on this matter," which Plaintiff conducted in "response to the claims made by [Defendant] in" Defendant's motion for summary judgment. (ECF No. 88 at 2.)

    As indicated by Plaintiff's supplemental response to Defendant's Interrogatory No. 1 in the Supplemental Disclosures, Plaintiff now asserts that the relevant interest in the Right of Way passed from Ashland, Inc. to Blazer Energy Corp. ("Blazer") through a June 1996 "Assignment, Bill of Sale and Conveyance" (the "Agreement"). (ECF No. 107, Ex. A at 5.) Plaintiff attached the Agreement to the Supplemental Disclosures. (*Id.* at 7–17.) The Agreement is signed by Ashland Exploration Holdings, Inc. as the "Assignor," Blazer as the "Assignee," and Ashland Inc. (*Id.* at 12.) The Agreement provides the following "Recitals" on the first page:

A.      [Ashland Exploration Holdings, Inc.] and [Blazer] entered into an Agreement for the Transfer of Assets dated as of the 20th day of June, 1996 ("the Assignor to Assignee Transfer Agreement") wherein [Ashland Exploration Holdings, Inc.] assigned and delivered to [Blazer], as a capital contribution, all of [Ashland Exploration Holdings, Inc.'s] right, title and interest in those certain oil and gas leases identified in the Assignor to Assignee Transfer Agreement, but reserving to [Ashland Exploration Holdings, Inc.] any and all "working interest" (as defined in the Assignor to Assignee Transfer Agreement) in certain wells located on the leases so assigned, such wells being specifically identified in the Assignor to Assignee Transfer Agreement and such reserved interests being referred to herein as the "AI Working Interests"). The Assignor to Assignee Transfer Agreement was amended effective June 20, 1996. As used hereinafter, the term "Assignor to Assignee Transfer Agreement" shall mean the original Assignor to Assignee Transfer Agreement, as amended. The Assignor to Assignee Transfer Agreement was not in recordable form.

B.      [Ashland Exploration Holdings, Inc.] entered into an Assignment and Transfer Agreement dated as of December 31, 1996 (the "Assignor to AI Transfer Agreement") wherein [Ashland Exploration Holdings, Inc.] dividended, conveyed, granted, assigned, transferred, set over and delivered to Ashland, Inc. . . . all of [Ashland Exploration Holdings, Inc.'s] interest in the AI Working Interests. The Assignor to AI Transfer Agreement was not in recordable form.

C.      [Ashland, Inc.] and [Blazer] entered into an Assignment and Transfer Agreement, also dated as of December 31, 1996 (the "AI to Assignee Transfer Agreement") wherein [Ashland, Inc.] sold, assigned and delivered the AI Working Interests to [Blazer]. The AI to Assignee Transfer Agreement was not in recordable form.

D.      The Properties, as hereinafter defined, include the AI Working Interest [sic] in the oil and gas leases and other property described herein as well as the interest in such leases and other properties assigned pursuant to the Assignor to Assignee Transfer Agreement. By virtue of the Assignor to Assignee Transfer Agreement, the Assignor to AI Transfer Agreement, and the AI to Assignee Transfer Agreement, [Blazer] has acquired all of the Properties, and for convenience [Ashland, Inc.] has authorized and directed [Ashland Exploration Holdings, Inc.] to transfer title directly to [Blazer] to the portion of the Properties which constitute the AI Working Interests together with the transfer by [Ashland Exploration Holdings, Inc.] to [Blazer] of title to the balance of the Properties.

E.      The parties hereto now desire to execute this Agreement in order to evidence of record the transfer of certain Properties in Lincoln County, West Virginia to [Blazer].

7

(*Id.* at 7.) As these recitals state, part of the purpose of the Agreement is to evidence other agreements that were "not in recordable form." (*Id.*)

In the "Assignment" section of the Agreement, Ashland Exploration Holdings, Inc. assigns all of its rights and interests—including to right of ways and easements—"described or referred to in Exhibit 'A'" to Blazer. (*Id.* at 8.) Included in the list in Exhibit A is a "property name" of "Ward Pauley" with a "property date" of July 14, 1925. (*Id.* at 16.) The "Assignment" section also provides an additional definition of the term "Properties" as including the interests transferred from Ashland Exploration Holdings, Inc. to Blazer Energy Corp. (*Id.* at 9.) The final pertinent portion of the Agreement for purposes of the instant case is also in the "Assignment" section and provides the following:

> [Ashland, Inc.] joins in the execution and delivery of this Assignment to acknowledge and confirm that it has directed [Ashland Exploration Holdings, Inc.] to execute and deliver this Assignment insofar as it applies to the interest in the AI Working Interests acquired by [Ashland, Inc.] under the terms of the Assignor AI Transfer Agreement [sic] and assigned to [Blazer] pursuant to the terms of the AI to Assignee Transfer Agreement. In addition, [Ashland, Inc.] intends by its execution and delivery of this Assignment to grant, bargain, sell, convey, assign, transfer, set over and deliver unto [Blazer] all of the right, title, and interest owned by [Ashland, Inc.] or its predecessors in title or any of its subsidiaries and affiliates.

(*Id.* at 11.)

The Agreement does not include a definition of the term "AI Working Interests." (*See id.* at 7–17.) Rather, as noted in the Agreement, the interests denoted by this term are "specifically identified" in the "Assignor to Assignee Transfer Agreement." (*Id.* at 7.) However, the "Assignor to Assignee Transfer Agreement" referenced in the Agreement is not a part of the record in this case.

Defendant filed the Motion for Sanction on August 24, 2015. (ECF No. 100.) Plaintiff filed

its opposition briefing on September 9, 2015, (ECF No. 107), and Defendant filed his reply in support of the Motion for Sanction on September 16, 2015, (ECF No. 108). As such, the Motion for Sanction is fully briefed and ready for disposition. The trial in this case is scheduled to begin on January 5, 2016. (ECF No. 116 ¶ 2.)

## II. Discussion

In the Motion for Sanction, Defendant requests that the Court exclude the Supplemental Disclosures as untimely pursuant to Federal Rule of Evidence 37(c).[3] (*See* ECF No. 100.) For the reasons that follow, the Court agrees with Defendant's position and orders that Plaintiff is not allowed to use the Supplemental Disclosures to supply evidence on a motion, at a hearing, or at trial.

### A.      Timeliness of the Supplemental Disclosures

The Court first considers whether Plaintiff served the Supplemental Disclosures in a timely manner, as required under Federal Rule of Civil Procedure 26(e)(1). For the reasons that follow, the Court finds that the Supplemental Disclosures were untimely.

"Modern instruments of discovery . . . make a trial less a game of blind man's [bluff] and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citations omitted). Federal Rule of Civil Procedure 26 governs parties' discovery obligations and "promotes fairness in the discovery process and at trial." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992). "For Rule 26

---

[3] In the Motion for Sanction, Defendant specifically requests that the Court strike the Supplemental Disclosures. (ECF No. 100.) However, Defendant requests this relief pursuant to Federal Rule of Civil Procedure 37(c)(1), (*id.* at 4), which provides for the exclusion of evidence that a party untimely discloses, *See* Fed. R. Civ. P. 37(c)(1). The Court therefore construes the Motion for Sanction as a motion to exclude the Supplemental Disclosures as untimely pursuant to Rule 37(c)(1).

to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." *Id.* "Further, the discovery rules place an obligation on the certifying attorney to make a reasonable inquiry into the factual basis for any discovery response, request, or objection." *Ball-Rice v. Bd. of Educ. of Prince George's Cty.*, Civil Action No. PJM–11–1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) (citing Fed. R. Civ. P. 26(g)(1)).

Rule 26 provides the following statement regarding a party's duty to supplement their responses to discovery requests:

> A party . . . who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1). "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment. "The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect." *Id.* "[I]nformation 'is incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004) (citations omitted). "There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process . . . ." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.

In this case, the relevant scheduling order provides a deadline for fact discovery of June 15, 2015. (ECF No. 67 ¶ 1.) The scheduling order does not otherwise indicate a deadline for supplementation of previous discovery disclosures. (*See* ECF No. 67.)

On March 24, 2014, the parties held their meeting pursuant to Federal Rule of Civil Procedure 26(f), in which they agreed to provide initial disclosures by April 28, 2014. (ECF No. 13) There is no indication in the record that Plaintiff included evidence resolving the Chain-of-Title Gap in these initial disclosures.

On February 12, 2015, Defendant served Plaintiff with his first discovery requests, which included the interrogatory regarding the chain of title for the Right of Way. (ECF No. 45.) On March 27, 2015, Plaintiff responded to this request and its answer presented the Chain-of-Title Gap. (*See* ECF No. 49 at 4–5.) On May 5, 2015, Defendant filed his notice to take the deposition of Plaintiff's representative pursuant to Federal Rule of Civil Procedure 30(b)(6). (ECF No. 61.) Over two months later on July 13, 2015, Plaintiff served Defendant with its first supplemental discovery responses regarding the Chain-of-Title Gap. (*See, e.g.*, ECF No. 107, Ex. A at 5.) In these first supplemental disclosures, Plaintiff attempted to resolve the Chain-of-Title Gap by stating that Ashland, Inc. assigned the right of way to Ashland Gas Marketing, Inc., which then changed its name to Ashland Exploration, Inc. (*See id.*) One week later on July 20, 2015, Defendant took the Rule 30(b)(6) deposition of Plaintiff's representative. (ECF No. 107, Ex. B.) During this deposition, Plaintiff's representative could not provide any additional support for Plaintiff's first supplemental assertion regarding the Chain-of-Title Gap. (*See id.* at 12:2–16:4.)

On August 7, 2015, Defendant filed his motion for summary judgment, in which he requests summary judgment as to all of Plaintiff's claims and Defendant's counterclaim for

trespass on the grounds that Plaintiff does not possess a valid interest in the Right of Way due to the Chain-of-Title Gap. (*See* ECF No. 85.) On August 14, 2015, Plaintiff filed the Supplemental Disclosures, in which it offers a completely and materially different theory regarding the Chain-of-Title Gap—namely, that Ashland, Inc. conveyed the Right of Way directly to Blazer in the Agreement. (*See* ECF No. 107, Ex. A at 5.)

Plaintiff served the Supplemental Disclosures regarding the Chain-of-Title Gap on Defendant over six months after Defendant's first discovery request for information pertaining to the chain of title for the Right of Way, roughly two months after the deadline for fact discovery provided in the Court's scheduling order, almost four weeks after Defendant took the Rule 30(b)(6) deposition of Plaintiff's representative, and one week after Defendant filed his motion for summary judgment. Plaintiff was aware of the issue pertaining to the Chain-of-Title Gap, as it had already supplemented its response to Defendant's Interrogatory No. 1 to address this precise issue—apparently of its own volition and without prompting by an additional inquiry from Defendant—on July 13, 2015. (*See* ECF No. 80.) However, Plaintiff provided this initial supplementation only "[u]pon information and belief" and failed to attach any supporting documentation, (ECF No. 107, Ex. A at 5), or provide any additional support for this initial supplemental position during the Rule 30(b)(6) deposition, (*id.*, Ex. B at 12:2–16:4). Plaintiff then conducted additional research and served Defendant with the Supplemental Disclosures, but only after the close of fact discovery and Defendant moving for summary judgment based, in part, on the issue of the Chain-of-Title Gap. (*See, e.g.*, ECF No. 88 at 2 (providing Plaintiff's statement that it "conducted further research" regarding the Chain-of-Title Gap "[i]n response to the claims made by [Defendant] in his [m]otion [for summary judgment]").) Undoubtedly, Plaintiff provided

12

these Supplemental Disclosures in a manner that was not timely. *See, e.g.*, *United States v. Whiterock*, No. 5:09–HC–2163–FL, 2012 WL 1825702, at *2 (E.D.N.C. May 18, 2012) (noting that "[s]upplementation to identify a witness for the first time after the close of discovery is manifestly not timely"); *cf. Branch v. Grannis*, No. 1:08–cv–01655–AWI–GSA–PC, 2014 WL 5819212, at *4 (E.D. Cal. Nov. 7, 2014) (finding that the defendant's supplemental document production was untimely where the defendant served the documents "long after discovery had closed" and "only two weeks before [the defendants] filed their motion for summary judgment"); *Reed v. Wash. Area Metro. Transit Auth.*, No. 1:14cv65, 2014 WL 2967920, at *2 (E.D. Va. July 1, 2014) ("Making a supplemental disclosure of . . . known fact witnesses a mere two days before the close of discovery . . . is not timely by any definition." (citation omitted)); *United States v. Cochran*, No. 4:12–CV–220–FL, 2014 WL 347426, at *6 (E.D.N.C. Jan. 30, 2014) (finding that plaintiff's disclosure of individuals with discoverable information was not timely where "plaintiff undoubtedly encountered difficulty in locating" these individuals, but never requested an extension of discovery and waited until after the close of discovery and "shortly before the dispositive motions deadline to identify these men"); *Quesenberry v. Volvo Grp. N. Am., Inc.*, 267 F.R.D. 475, 479 (W.D. Va. 2010) (finding that the plaintiffs did not disclose the identity of "persons likely to have discoverable information" in a timely fashion where they disclosed the identities of these individuals four months after the discovery deadline and "nearly three months after the submission of summary judgment briefs"). *But see Qdoba Rest. Corp. v. Taylors, LLC*, Civil Action No. 08–cv–01179–MSK–KMT, 2009 WL 1938819, at *1 (D. Colo. July 2, 2009) ("The Rules do not prohibit supplementation simply because the discovery deadline has passed . . . .").

Accordingly, the Court finds that Plaintiff did not serve the Supplemental Disclosures on

Defendant in a timely manner, as required by Federal Rule of Civil Procedure 26(e)(1).

**B.**    **Sanctions**

The Court next considers whether a sanction is appropriate for Plaintiff's untimely service of the Supplemental Disclosures. Defendant argues that the appropriate sanction is the exclusion of the Supplemental Disclosures and the attached Agreement pursuant to Federal Rule of Civil Procedure 37(c)(1). (ECF No. 100 at 4.) The Court agrees.

Federal Rule of Civil Procedure 37 provides remedies for a party's failure to provide the required supplements to discovery responses and states the following, in pertinent part:

> If a party fails to provide information . . . as required by Rule 26 . . . (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)  may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)  may inform the jury of the party's failure; and
>
> (C)  may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) . . . generally requires exclusion of evidence that a party seeks to offer but has failed to disclose." *S. States Rock & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The Rule 37(c) advisory committee notes emphasize that the 'automatic sanction' of exclusion 'provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence.'" *Id.* at 592 n.2 (quoting Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment). "The alternative sanctions referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party." *Id.* (emphasis in original) (citation omitted). "This is because '[p]reclusion of evidence is

14

not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.'" *Id.* (quoting Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment).

"Rule 37(c)(1) could prevent a non-moving party in a summary judgment proceeding from offering evidence to support its claims when that party has previously failed to meet its disclosure and duty to supplement requirements." *Contech Stormwater Sols., Inc. v. Baysaver Techs.*, 534 F. Supp. 2d 616, 622 (D. Md. 2008). The Court may exclude this evidence even if the non-disclosing party did not act in bad faith, as "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *S. States Rock & Fixture*, 318 F.3d at 596. *See generally id.* ("[R]equiring proof that the nondisclosing party acted in bad faith would improperly shift the burden of proof away from the party on the exclusion issue." (citation omitted)). "Excluding evidence as a sanction for non-disclosure, even in the absence of bad faith, supports what the Fourth Circuit has identified as the 'basic purpose' of Rule 37(c)(1), which is to prevent surprise and prejudice to the opposing party." *Contech Stormwater Sols., Inc.*, 534 F. Supp. 2d at 622 (quoting *S. States Rock & Fixture*, 318 F.3d at 596).

Nonetheless, "[t]he language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantial[ly] justify[ed],' and (2) when the nondisclosure is 'harmless.'" *S. States Rock & Fixture*, 318 F.3d at 596 (second and third alterations in original) (quoting Fed. R. Civ. P. 37(c)(1)). The Fourth Circuit provided the following analysis for a district court to determine whether a nondisclosure was substantially justified or harmless:

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1)

15

exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 597. "Four of these factors . . . relate mainly to the harmlessness exception, while the remaining factor—explanation for the nondisclosure—relates primarily to the substantial justification exception." *Id.* "The burden of establishing these factors lies with the nondisclosing party . . . ." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (citation omitted).

While the Fourth Circuit provided that district courts should consider these five factors, it also stated that a "district court [is] not *required* to tick through each of the *Southern States* factors." *Id.* Accordingly, district courts are "not required . . . to expressly consider each factor when evaluating discovery violations." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011); *see also Wilkins*, 751 F.3d at 222 (stating that a "district court's failure to cite *Southern States* and specifically address each of the five factors listed therein does not amount to an abuse of discretion"). Nonetheless, the Court shall address each of the *Southern States* factors, in turn. For the reasons that follow, the Court finds that the five *Southern States* factors demonstrate that Plaintiff's untimely service of the Supplemental Disclosures was neither harmless nor substantially justified.

First, the record clearly indicates that Plaintiff's entirely new theory in the Supplemental Disclosures regarding the Chain-of-Title Gap surprised Defendant. Plaintiff's initial March 2015 response to Defendant's interrogatory regarding the chain of title for the Right of Way presented the Chain-of-Title Gap. (ECF No. 49 at 4–5.) Over two months later on July 13, 2015, Plaintiff served Defendant with a supplemental response, which provided that Ashland, Inc. assigned the

right of way to Ashland Gas Marketing, Inc., which then changed its name to Ashland Exploration, Inc. (*See, e.g.*, ECF No. 107, Ex. A at 5.) However, when Defendant took the Rule 30(b)(6) deposition of Plaintiff's representative one week later, that representative could not reference any evidence supporting this theory regarding the Chain-of-Title Gap. (*See id.*, Ex. B at 12:2–16:4.)

On August 7, 2015—six months after the first interrogatory and roughly three weeks after the Rule 30(b)(6) deposition—Defendant filed his motion for summary judgment, which included arguments regarding the Chain-of-Title Gap. (*See* ECF No. 85 at 6–9.) Defendant understandably relied in this motion on the last statement from Plaintiff on the issue of the Chain-of-Title Gap—namely, that Ashland, Inc. assigned its interest to a third entity, which then changed its name to Ashland Exploration, Inc. (*See id.*) Based on the record in this case, there was no way for Defendant to know that Plaintiff would again completely change its theory regarding the Chain-of-Title Gap in the Supplemental Disclosures and Plaintiff's opposition briefing. (*See, e.g.*, ECF No. 88 at 2 (providing Plaintiff's statement that it located the Agreement and provided the theory set forth in the Supplemental Disclosures "[i]n response to the claims made by [Defendant] in his [m]otion [for summary judgment] regarding an alleged 'gap' in [Plaintiff's] chain of title to" the Right of Way).) This certainly constitutes surprise. *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003) ("Although Fed. R. Civ. P. 26(e) requires a party to 'supplement or correct' disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in [earlier disclosures].").

Plaintiff nonetheless asserts that there was no surprise because it "has consistently maintained its interest in and rights relating to the [Right of Way]." (ECF No. 107 at 7.) This

17

argument conflates Plaintiff's varying theories regarding the Chain-of-Title Gap with Plaintiff's consistent assertion of its interest in the Right of Way. The Chain-of-Title Gap is what is presently at issue and Plaintiff's Supplemental Disclosures fundamentally alter Plaintiff's position on this topic. The Court therefore finds that Plaintiff's Supplemental Disclosures regarding the Chain-of-Title Gap surprised Defendant and this surprise weighs in favor of excluding the Supplemental Disclosures.

Second, Defendant has little to no chance to cure the surprise. Fact discovery in this case closed on June 15, 2015, (*see* ECF No. 67 ¶ 1 (constituting the relevant scheduling order, in which the Court orders that "all discovery . . . shall be completed" by June 15, 2015)), and Defendant has already conducted his Rule 30(b)(6) deposition of Plaintiff's representative, (*see, e.g.*, ECF No. 100 at 2 (noting that Defendant "took the deposition of Plaintiff's 30(b)(6) . . . representative" on July 20, 2015)). Absent a Court order permitting additional discovery, Defendant has no available discovery options to explore Plaintiff's new theory regarding the Chain-of-Title Gap. In short, "[i]t is hard to accept that these events would not serve as a surprise to [Defendant], or that [Defendant] could easily cure such a surprise." *Wilkins*, 751 F.3d at 223; *see also id.* (finding that the district court did not err in excluding discovery disclosures that were made "after discovery was closed" and "after [the non-disclosing party] filed a motion for summary judgment"); *Firehouse Rest. Grp., Inc. v. Scurmont LLC*, C/A No. 4:09–cv–00618–RBH, 2011 WL 3555704, at *3 (D.S.C. Aug. 11, 2011) (finding that the surprise and ability to cure factors favored excluding the document disclosures where "counsel for [the plaintiff] represented that he has already deposed [the witness] and did not have these printouts available for the deposition" and "there is no opportunity at this late date to re-depose him"). Accordingly, the Court finds that Defendant has little available

18

opportunity to cure the surprise caused by Plaintiff's untimely Supplemental Disclosures and this inability to cure weighs in favor of excluding these disclosures.

Third, Plaintiff's Supplemental Disclosures would likely impact the Court's schedule and the trial deadlines if not excluded from these proceedings. The trial in this matter is scheduled for January 5, 2016. (ECF No. 116 ¶ 2.) If the Court does not exclude the Supplemental Disclosures, it would likely have to permit additional discovery and summary judgment briefing on Plaintiff's new theory regarding the Chain-of-Title Gap. These additional steps would then force the Court to postpone the trial in this case.

Plaintiff asserts that Defendant "gives no explanation as to why the disclosure would require additional discovery and postponement of the trial." (ECF No. 107 at 9.) The Court is not persuaded by this argument, as the delays are self-evident from the potential need for additional discovery and briefing to explore Plaintiff's new theory in the Supplemental Disclosures regarding the Chain-of-Title Gap.

The Court thus finds that Plaintiff's use of the Supplemental Disclosures would force large changes in the Court's schedule, including the current trial date in this matter. As such, the Court also finds that the Court's schedule and the trial deadlines weigh in favor of excluding the Supplemental Disclosures.

Fourth, the importance of the Supplemental Disclosures is far from clear. Plaintiff now posits that there is no Chain-of-Title Gap due to Ashland, Inc. directly transferring its interest in the Right of Way to Blazer in the Agreement. (*See, e.g.*, ECF No. 107, Ex. A at 5 (providing Plaintiff's "amended response" to Defendant's Interrogatory No. 1 in the Supplemental Disclosures).) Two portions of the Agreement are potentially relevant to determine whether it

19

evidences such a transfer. In the recitals section, the Agreement provides that Ashland, Inc. transferred its interests in the "AI Working Interests" to Blazer. (*Id.* at 7.) However, the Agreement never defines the "AI Working Interests." (*See id.* at 7–17.) Instead, the Agreement states that the "AI Working Interests" include "all 'working interests' (as defined in the Assignor to Assignee Transfer Agreement) in certain wells . . . , such wells being specifically identified in the Assignor to Assignee Transfer Agreement." (*Id.* at 7.) Based on this statement, the Agreement is not a standalone document and requires the definition of the term "AI Working Interests" provided in the "Assignor to Assignee Transfer Agreement" to determine precisely what interests Ashland, Inc. assigned to Blazer. (*See id.*) Remarkably, however, this "Assignor to Assignee Transfer Agreement" is not in the record for this case. Indeed, the Agreement indicates that this additional agreement "was not in recordable form." (*Id.*) Absent this "Assignor to Assignee Transfer Agreement," the Court cannot determine that Ashland, Inc.'s assignment of the "AI Working Interests" to Blazer, as evidenced in the Agreement, included Ashland, Inc.'s interests in the Right of Way.[4]

---

[4] The Agreement also provides the following regarding interests Ashland, Inc. assigned to Blazer:

> [Ashland, Inc.] joins in the execution and delivery of this Assignment to acknowledge and confirm that it has directed [Ashland Exploration Holdings, Inc.] to execute and deliver this Assignment insofar as it applies to the interest in the AI Working Interests acquired by [Ashland, Inc.] under the terms of the Assignor AI Transfer Agreement [sic] and assigned to [Blazer] pursuant to the terms of the AI to Assignee Transfer Agreement. In addition, [Ashland, Inc.] intends by its execution and delivery of this Assignment to grant, bargain, sell, convey, assign, transfer, set over and deliver unto [Blazer] all of the right, title, and interest owned by [Ashland, Inc.] or its predecessors in title or any of its subsidiaries and affiliates.

(ECF No. 107, Ex. A at 11.) The first sentence of this provision again indicates that Ashland, Inc. transferred its interest in the "AI Working Interests" to Blazer. (*Id.*)

The second sentence further states that Ashland, Inc. intended to assign "all of the right, title, and interest owned by" Ashland, Inc. (*Id.*) However, this second sentence is ambiguous insofar as it does not provide *what* interests to which it pertains. *See, e.g.*, *Harris v. Harris*, 575 S.E.2d 315, 709 (W. Va. 2002) ("Generally, '[a] contract is considered ambiguous if it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction.'" (alteration in original) (quoting *Jessee v. Aycoth*, 503 S.E.2d 528, 531 (W. Va. 1998))). "In order to resolve ambiguity in a contract, the intent of the parties

20

Next, in the assignment section, the Agreement provides that Ashland Exploration Holdings, Inc. assigns to Blazer all of its rights and interests—including to right of ways and easements—"described or referred to in Exhibit 'A.'" (*Id.* at 8.) Included in the list in Exhibit A is an interest in property pertaining to "Ward Pauley" on July 14, 1925, (*id.* at 16)—the date on which the Pauleys entered into the agreement creating the Right of Way, (*see, e.g.*, ECF No. 107, Ex. A at 4 (providing Plaintiff's interrogatory response, in which they state that "Ward Pauley & Hattie Pauley granted a right of way to Clayco Gas Company on or about July 14, 1925")). This may be the Right of Way in question. However, if this provision evidences a transfer of the Right of Way, the Agreement does not explain—and Plaintiff does not otherwise assert—how Ashland Exploration Holdings, Inc. ever obtained the relevant interest in the Right of Way. (*See id.* at 7–17 (constituting the Agreement); *id.* at 5 (providing Plaintiff's amended interrogatory response in the Supplemental Disclosures, in which Plaintiff asserts that "the [Right of Way] was actually assigned as part of the attached [Agreement] which conveyed the [Right of Way] at issue from Ashland, Inc. to Blazer").) In other words, even if the Agreement evidences a transfer of the interest in the Right of Way from Ashland Exploration Holdings, Inc. to Blazer, a gap in the chain of title for the Right of Way still exists.[5]

---

must be ascertained." *Id.* To ascertain the parties' intent, courts must "examin[e] the language of the entire agreement." *Chapman-Martin Excavating & Grading, Inc. v. Hinkle Contracting Co.*, Civil Action No. 2:11–cv–00563, 2011 WL 5999868, at *3 (S.D. W. Va. Nov. 30, 2011) (citing *E. Gas & Fuel Assoc. v. Midwest-Raleigh, Inc.*, 374 F.2d 451, 454 (4th Cir. 1967)). "Specifically, a court must construe the agreement's language in the manner that is most consistent with the contract viewed in its entirety." *Id.* (citing *S.J. Groves & Sons Co. v. W. Va. Turnpike Comm'n*, 164 F. Supp. 816, 822 (S.D. W. Va. 1958)).

    Viewing the Agreement, as a whole, the only references to Ashland, Inc. assigning any interests to Blazer are to Ashland, Inc transferring its interests in the "AI Working Interests." (*See* ECF No. 107, Ex. A at 7–17.) Indeed, the preceding sentence again references only Ashland, Inc.'s interests in the "AI Working Interests." (*Id.* at 11.) The Court therefore interprets the second sentence of this quoted language as similarly pertaining to Ashland, Inc.'s interests in the "AI Working Interests." However, as noted above, the Agreement never defines the "AI Working Interests," (*see id.* at 7–17), so the Court cannot determine whether this provision evidences an assignment by Ashland, Inc. to Blazer of its interests in the Right of Way.

[5] Furthermore, even if the Right of Way was part of the AI Working Interests conveyed by Ashland, Inc. to Blazer in

The Court thus finds that the Agreement is far from determinative regarding the Chain-of-Title Gap. The only evidence in the record to support Plaintiff's assertions in the Supplemental Disclosures is the Agreement, which Plaintiff attached to these disclosures. The Court therefore also finds that the importance of the Supplemental Disclosures is debatable, at best, and weighs in favor of excluding the Supplemental Disclosures.

Fifth, Plaintiff has not offered an adequate explanation for its failure to timely disclose the Supplemental Disclosures. Plaintiff's only explanation for these untimely disclosures is that the Agreement "was discovered in response to the recent claims of a purported 'gap' in title made by" Defendant in his summary judgment motion. (ECF No. 107 at 2.) Plaintiff was aware of the issue pertaining to the Chain-of-Title Gap at least by the time it provided its now-abandoned initial supplemental response to Defendant's Interrogatory No. 1 on July 13, 2015. (*See, e.g.*, ECF No. 88, Ex. 1 at 2.) Plaintiff did not provide any evidentiary support for this initial response, (*see* ECF No. 88, Ex. 1), and Plaintiff's Rule 30(b)(6) representative testified that he was not aware of any evidence supporting this theory regarding the Chain-of-Title Gap, (*see* ECF No. 107, Ex. B at 12:2–16:4). Nonetheless, Plaintiff waited until after Defendant made "claims . . . in his [m]otion [for summary judgment] regarding an alleged 'gap' in [Plaintiff's] chain of title" to "conduct[] further research on this matter," "discover[]" the Agreement, and serve the Supplemental Disclosures.[6] (ECF No. 88 at 2.) However, supplementation to avoid summary judgment is not an

---

the Agreement, it appears from the face of the Agreement that Ashland, Inc. received the AI Working Interests from Ashland Exploration Holdings, Inc. in the "Assignor to AI Transfer Agreement." (*See* ECF No. 107, Ex. A at 7.) In this scenario, the same gap in the chain of title exists—Plaintiff still has not provided any explanation or evidence indicating how Ashland Exploration Holdings, Inc. obtained the interest in the Right of Way.

[6] The Court also notes that Plaintiff did not request permission of the Court to supplement its discovery disclosures, even though it provided these new disclosures roughly two months after the deadline for fact discovery. (*See, e.g.*, ECF No. 67 ¶ 1 (providing the relevant scheduling order, in which the Court provides a "discovery completion date" of June 15, 2015).)

adequate explanation for untimely discovery disclosures. *See, e.g.*, *Jermano v. Graco Children's Prods., Inc.*, No. 13–cv–10610, 2015 WL 1737548, at *4 (E.D. Mich. Apr. 16, 2015) (stating that a party may not supplement "an expert's testimony following the close of discovery in order to manufacture a material factual dispute and avoid summary judgment"); *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630 (E.D.N.C. 2008) ("Supplementation . . . is not a license to amend an expert report to avoid summary judgment." (citations omitted)); *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 80 (D. Mass. 2008) ("[F]airness to [the defendant] militates against allowing [the plaintiff] to proffer undisclosed information that [the defendant] repeatedly requested during discovery as a means to avoid summary judgment." (citation omitted)); *Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 161 (D. Me. 2003) ("While supplementation of interrogatory answers may be allowed under some circumstances, it should not be allowed after the filing of dispositive motions and on the eve of trial in the absence of extraordinary circumstances . . . ."). *See generally Gallagher*, 568 F. Supp. 2d at 631 ("Courts distinguish true supplementation (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing [discovery disclosures] with . . . new and improved [discovery disclosures]." (citations omitted)).

Furthermore, the fact that Plaintiff discovered the Agreement—which is Plaintiff's sole evidence in support of the Supplemental Disclosures—in a week indicates that it conducted, at best, a dilatory search initially in response to Defendant's interrogatory pertaining to the chain of title for the Right of Way, before serving the initial supplement to this interrogatory on July 13, 2015, and after the 30(b)(6) deposition in which Defendant questioned Plaintiff's representative on this issue. The apparent ease with which Plaintiff located the Agreement indicates that any

explanation for Plaintiff's untimely service of the Supplemental Disclosures is inadequate. *See, e.g.*, *United States v. Cochran*, No. 4:12–CV–220–FL, 2014 WL 347426, at *4 (E.D.N.C. Jan. 30, 2014) (rejecting the plaintiff's explanation that it could not locate a potential witness earlier where "[t]he speed with which [the] plaintiff located [the potential witness] . . . belies prior difficulty in so doing"). *See generally Miller v. United States*, No. 5:09–CV–534–F, 2011 WL 3440753, at *4 (E.D.N.C. Aug. 8, 2011) ("Put simply, Plaintiffs dragged their feet. . . . Information is gleaned during discovery which allows parties to 'change their calculus' with respect to the litigation. Having waited to glean vital information, Plaintiffs cannot transform what is at best a strategic misstep into substantial justification.").

For these reasons, the Court finds that Plaintiff's untimely service of the Supplemental Disclosures was not substantially justified. The Court therefore also finds that Plaintiff's unjustified delay in serving the Supplemental Disclosures weighs in favor of excluding these discovery disclosures.

In summary, the Court finds that each of the *Southern States* factors indicates that Plaintiff's untimely disclosure of the Supplemental Disclosures was neither substantially justified nor harmless. *See, e.g.*, *S. States Rock & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (providing the five-factor analysis to determine whether a party's untimely disclosures were substantially justified or harmless). The Court notes that Plaintiff relies in its summary judgment briefing on its new theory in the Supplemental Disclosures to address the issue of the Chain-of-Title Gap. (*See* ECF No. 88 at 4–5 (providing Plaintiff's opposition to Defendant's motion for summary judgment); ECF No. 98 at 1–2 (providing Plaintiff's reply in support of its motion for summary judgment).) The Court also recognizes that the Fourth Circuit has consistently

24

"expressed a strong preference that, as a general matter, . . . claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, under Federal Rule of Civil Procedure 37(c)(1) and *Southern States*, Plaintiff's harmful and unjustified late disclosure of the Supplemental Disclosures warrants the exclusion of these materials from this litigation.

### III. Conclusion

For the reasons provided herein, the Court **GRANTS** the Motion for Sanction, insofar as Defendant requests the exclusion of Plaintiff's Supplemental Disclosures.[7] (ECF No. 100.) Accordingly, pursuant to Federal Rule of Civil Procedure 37(c)(1), the Court **ORDERS** that Plaintiff may not use the Supplemental Disclosures—including the Agreement attached to these disclosures—to supply evidence on a motion, at a hearing, or at trial.

**IT IS SO ORDERED**.

---

[7] On September 18, 2015, Defendant also filed a Motion to Withdraw Footnote No. 1 from Defendant's Reply Brief (the "Motion to Withdraw"). (ECF No. 109.) To date, Plaintiff has not filed an opposition to the Motion to Withdraw. For good cause shown, the Court **GRANTS** the Motion to Withdraw to the extent that Defendant requests to withdraw footnote number 1 from his reply brief in support of the Motion for Sanction. (*Id.*) Accordingly, the Court **ORDERS** that footnote number 1 in Defendant's reply brief in support of the Motion for Sanction is **WITHDRAWN**. (ECF No. 108.)

The Court notes that Defendant also requests "fees and expenses incurred relative to the flawed chain of title issues" in the Motion to Withdraw. (ECF No. 109 at 2.) However, Court further notes that the parties have not otherwise briefed the issue of fees and expenses relative to the Motion for Sanction, the Supplemental Disclosures, and issues pertaining to the Chain-of-Title Gap. The Court therefore declines to rule on the issue of fees and expenses in the instant opinion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          December 16, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE